NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0511-22

IN RE APPEAL OF THE NEW
JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION'S
SEPTEMBER 6, 2022 DENIAL OF
REQUEST FOR ADJUDICATORY
HEARING UNDER N.J.A.C.
7:26C-9.10, DATED MAY 12, 2022,
CONCERNING THE DEPARTMENT'S
APRIL 20, 2022 NOTICE OF
REMEDIATION IN PROGRESS
WAIVER RESCISSION.

_____

APPROVED FOR PUBLICATION

February 5, 2024

APPELLATE DIVISION

Submitted December 12, 2023 – Decided February 5, 2024

Before Judges Whipple, Mayer and Enright.

On appeal from the New Jersey Department of
Environmental Protection.

Roy D. Prather III (Beveridge & Diamond, PC), and
John H. Paul (Beveridge & Diamond, PC) of the New
York and District of Columbia bars, admitted pro hac
vice, attorneys for appellant Clarios, LLC (Roy D.
Prather III and John H. Paul, on the briefs).

Matthew J. Platkin, Attorney General, attorney for
respondent New Jersey Department of Environmental
Protection (Sookie Bae-Park, Assistant Attorney
General, of counsel; Bethanne Sonne Prugh, Deputy
Attorney General, on the brief).

Riker Danzig, LLP, attorneys for intervenor 760 New Brunswick Urban Renewal Limited Liability Company (Steven T. Senior, of counsel and on the brief; Michael Steven Kettler, on the brief).

The opinion of the court was delivered by

WHIPPLE, P.J.A.D.

In this appeal we consider whether a Remediation in Progress waiver (RIP waiver) issued by the New Jersey Department of Environmental Protection (NJDEP) conveys a property interest to the recipient that is constitutionally protected by the right to due process. We conclude it does not and affirm.

Clarios, LLC (Clarios) appeals from the September 6, 2022 decision by NJDEP to deny its request for an adjudicatory hearing concerning its April 20, 2022 decision to rescind Clarios's RIP waiver. 760 New Brunswick Urban Renewal Limited Liability Company (760 New Brunswick or intervenor) has intervened in the action as the current owner of the premises at issue, 760 Jersey Avenue, New Brunswick (the Site).

I.

RIP Waivers

In 1983, the Legislature enacted one of the country's first industrial site environmental clean-up statutes, Environmental Cleanup Responsibility Act (ECRA), to address the handling and disposal of hazardous substances upon

the closure or transfer of industrial establishments, including the cleanup of those substances if they have been discharged into the environment. ECRA was enacted to prevent the abandonment of contaminated industrial sites and place the financial responsibility for remediation on the owners and operators rather than on the taxpayers. See Senate Energy and Environment Comm. Statement to A. 1231-L (1983); N.J.S.A. 13:1K-7. In 1993, ECRA was substantially amended and replaced by the Industrial Site Recovery Act (ISRA) to streamline, and promote greater certainty in, the regulatory process; the basic purposes of the law, however, remained unchanged.

The owner or operator of an industrial establishment is subject to ISRA when they cease operations or transfer ownership or operation of the industrial establishment. N.J.S.A. 13:1K-9(a). Before doing so, ISRA requires the owner or operator of an industrial establishment to remediate its industrial establishment and obtain a final remediation document. N.J.S.A. 13:1K-9(b). To expedite transfers and cessations of contaminated industrial sites, ISRA permits alternatives to obtaining a final remediation document prior to the cessation of operations or transfer of property, including an RIP waiver. See N.J.A.C. 7:26B-5.4. An RIP waiver allows the owner or operator of an industrial establishment to apply to the NJDEP to close or transfer ownership or operations, provided that the industrial establishment is already in the

A-0511-22

process of remediation and specific requirements are met. N.J.S.A. 13:1K-11.5; N.J.A.C. 7:26B-5.4.

An RIP waiver does not exempt the owner or operator from its statutory obligation under N.J.S.A. 13:1K-9(b) to remediate the industrial establishment but acknowledges remediation at the property is ongoing; for as long as that remediation is ongoing, the RIP waiver recipient's ISRA obligation to remediate its industrial establishment is suspended. The issuance of an RIP waiver "may not relieve the owner or operator or any person responsible for conducting the remediation of the industrial establishment, of the obligations to remediate the industrial establishment pursuant to ISRA, this chapter[,] and any other applicable law." N.J.A.C. 7:26B-1.8(b).

As its name indicates, an RIP waiver is contingent on remediation being in progress; if remediation falls out of compliance, the RIP waiver applicant no longer qualifies for the suspension under N.J.S.A. 13:1K-11.5, and the NJDEP may rescind the RIP waiver. That is what occurred here.

II.

The Site ownership history is relevant to our discussion. Delphi Automotive Systems, LLC (Delphi) previously owned the Site where it manufactured automobile batteries. In 2006, Delphi sold the property to a corporate predecessor of Clarios (Johnson Controls Battery Group, Inc.) and

filed a General Information Notice (GIN) with NJDEP, as required under ISRA. NJDEP assigned case number E20060211 and required Delphi to enter into a remediation agreement for the Site and establish a remediation funding source to cover the cost of remediation efforts. Under ISRA, Delphi became the party responsible for remediation of the Site.

In January 2007, Clarios announced plans to cease operations at the Site and soon filed with NJDEP a GIN and an application for an RIP waiver. NJDEP assigned case number E20070027 and granted the RIP waiver. NJDEP's grant of the RIP waiver was based on statutorily required certifications by Clarios, including that (a) a Preliminary Assessment Report had been submitted for the Site under the previously commenced ISRA case by Delphi (ISRA Case No. E20060211), (b) there was no discharge of hazardous substances at the Site during Clarios's ownership, and (c) a remediation funding source was established in an amount equal to the estimated costs of remediation.

Clarios then conveyed the Site to DeNovo New Brunswick, LLC (DeNovo), which later conveyed the Site to 760 New Brunswick.

In January 2013, DeNovo signed a remediation certificate with the NJDEP, to assume from Delphi the responsibility for completing remediation at the Site, pursuant to ISRA Case No. E20060211. Based on estimates

5

provided by the licensed site remediation professional supervising DeNovo's remediation efforts, beginning in 2019, the balance of the remediation funding source—initially established by Delphi and subsequently assigned to DeNovo—fell below the estimated cost of completing the remediation. This failure to maintain a remediation funding source in an amount of the estimated cost of the remediation caused the remediation pursuant to ISRA Case No. E20060211 to become non-compliant with the requirements of N.J.S.A. 13:1K-9(e)(3).

In addition, NJDEP determined the Site's 2019 remedial investigation report was incomplete and needed to be withdrawn, which resulted in a cascade of noncompliance, culminating in a missed deadline for completion of the entire remedial action for the Site on February 28, 2022. Thus, on April 20, 2022, NJDEP issued a letter to Clarios, advising:

> The Site is out of compliance for failure to submit the remedial investigation report by the regulatory timeframe of March 1, 2019[;] failure to complete the remedial action by the regulatory timeframe of February 28, 2022, pursuant to N.J.A.C. 7:26C-3.2(a)[;] and failure to establish and maintain a remediation funding source pursuant to ISRA, N.J.S.A. 13:1K-6 [to -14], in accordance with N.J.A.C. 7:26C-5.2(a)1.
>
> . . . .
>
> [Because] the previous case [fell] out of compliance with the remediation schedule, [NJDEP] may rescind

6

the waiver and require the applicant to complete the remediation pursuant to N.J.A.C. 7:26b-3.3(a). Accordingly, ISRA case number E20060211 is not in compliance and therefore [NJDEP] hereby rescinds [Clarios's] Remediation in Progress Waiver approval dated March 12, 2007.

On May 12, 2022, Clarios requested an adjudicatory hearing to challenge NJDEP's decision to rescind the RIP waiver. NJDEP denied this request in a letter dated September 6, 2022, stating that the rescission of an RIP waiver is not an action for which an adjudicatory hearing is provided pursuant to either N.J.A.C. 7:26C-9.10(a) or the Administrative Procedure Act. Clarios appealed.

## III.

Because administrative agencies serve executive functions, we are permitted only limited review of agency decisions and are permitted to intervene only when "an agency action is clearly inconsistent with its statutory mission or with other State policy." George Harms Const. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994). We review an agency's purely legal determinations de novo. G.C. v. Div. of Med. Assist. and Health Servs., 249 N.J. 20, 40 (2021).

"The Fourteenth Amendment to the United States Constitution and Article I, Paragraph 1 of the New Jersey Constitution protect individuals from deprivations of life, liberty, and property, without due process of law."

Thomas Makuch, LLC v. Twp. of Jackson, 476 N.J. Super. 169, 184-85 (App. Div. 2023); see also Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985). Absent a statutory requirement, due process protections are not implicated if neither a liberty interest nor a property interest is threatened. Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972). Clarios's arguments on appeal turn entirely on its purported protected property right in the continued validity of its RIP waiver.

Clarios argues NJDEP's grant of the RIP waiver in 2007 created a property interest protected by a right to due process in that the RIP waiver operates like a license—well-recognized to be in the nature of a property right—that permits the receiving party to conduct certain activities and exempts it from obligations subject to the State's stipulations. The RIP waiver, Clarios asserts, allows the receiving party to enjoy certain benefits (i.e., relief from ISRA requirements that would otherwise be applicable), and if the benefits of the waiver are taken away, the holder of the waiver is entitled to a hearing pursuant to the constitutional guarantee of procedural due process. Clarios argues NJDEP's rescission of its RIP waiver puts Clarios at risk of having to assume financial responsibility for the Site's remediation, which affects Clarios's property interest.

A-0511-22

The property interest protected by the Fourteenth Amendment "may take many forms over and above the ownership of tangible property." Thomas Makuch, LLC, 476 N.J. Super. at 185 (quoting Nicoletta v. N.J. Dist. Water Supply Comm'n, 77 N.J. 145, 154 (1978)). "Accordingly, a person may have a property interest in a 'benefit.'" Ibid. (quoting Roth, 408 U.S. at 577). Contrary to Clarios's assertion, the economic advantage an entity receives from a benefit does not translate to a property interest; rather, the primary requirement for converting a "benefit" to a protected property interest is a "legitimate claim of entitlement." Ibid. (quoting Nicoletta, 77 N.J. at 154-55 (quoting Roth, 408 U.S. at 577)). Therefore, "[t]o have a property interest in a benefit, [an entity] clearly must have more than an abstract need or desire for it. [They] must have more than a unilateral expectation of it." Ibid. (first alteration in original) (quoting Roth, 408 U.S. at 577). Instead, a "legitimate claim of entitlement" can be found when "rules or understandings that secure certain benefits . . . support claims of entitlement to those benefits." Roth, 408 U.S. at 577; see also Nicoletta, 77 N.J. at 154 (collecting cases examining "entitlement" to property interests).

To that end, courts define property interests by examining "existing rules or understandings that stem from an independent source such as state law. . . ." Roth, 408 U.S. at 577; see also New Brunswick Sav. Bank v. Markouski, 123

9
A-0511-22

N.J. 402, 411 (1991). "In deciding whether a state or local statute, ordinance, or regulatory scheme creates a property interest, courts look to see if they substantively limit official discretion" to bestow or revoke the benefit at issue. Thomas Makuch, LLC, 476 N.J. Super. at 185 (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Castle Rock, 545 U.S. at 756. We should, therefore, "examine the statutes, regulations, and case law concerning [the RIP waiver] . . . to determine the scope of [appellant's entitlement and property] interest." J.E. ex rel. v. State, Dep't of Hum. Servs., 131 N.J. 552, 564 (1993).

Under ISRA and the associated regulation, the RIP waiver authorizes the "owner or operator of an industrial establishment . . . to close operations or transfer ownership or operations at an industrial establishment without obtaining departmental approval of a remedial action workplan or a negative declaration or without the approval of a remediation agreement" so long as "the industrial establishment is already in the process of a remediation . . . ." N.J.S.A. 13:1K-11.5(a); see also N.J.A.C. 7:26B-5.4(b). In addition, N.J.A.C. 7:26B-1.8(a) provides that an "owner or operator is authorized to transfer ownership or operations of an industrial establishment, or in the case of a cessation of operations authorize the cessation as it relates to ISRA

A-0511-22

compliance, without, or prior to the issuance of, a final remediation document" following NJDEP's "approval of a remediation in progress waiver application pursuant to N.J.A.C. 7:26B–5.4(d)." "The issuance of an authorization letter" as referenced in N.J.A.C. 7:26B-1.8(a)(3), however, "may not relieve the owner or operator . . . of the obligations to remediate the industrial establishment pursuant to ISRA . . . and any other applicable law." N.J.A.C. 7:26B-1.8(b).

Thus, both the relevant statute and the related regulation state the action permitted by the RIP waiver is the "close [of] operations or transfer [of] ownership or operations [at an] industrial establishment." N.J.S.A. 13:1K-11.5(a); N.J.A.C. 7:26B-5.4(b). The benefit conferred by the RIP waiver is that the owner or operator may effect such close of operations or transfer of ownership prior to "obtaining departmental approval of a remedial action workplan or a negative declaration or without the approval of a remediation agreement." N.J.S.A. 13:1K-11.5(a). Once that closure or transfer is complete, the recipient of the RIP waiver has received the benefit of that waiver. In this case, Clarios was granted the RIP waiver on March 12, 2007, following notice on January 4, 2007, of its intention to cease operations at the Site. Clarios did cease operations at the site and, later, conveyed the property to DeNovo on August 5, 2011. At that point, Clarios had received the

sole benefits provided by the RIP waiver.

However, the RIP waiver does not suspend the need to remediate the industrial establishment. It waives only the requirement to provide for remediation before the close of operations or the transfer of ownership. In addition, the regulation that provides for the issuance of RIP waivers explicitly limits the authority of the waiver to relieve the recipient of "the obligations to remediate the industrial establishment pursuant to ISRA . . . and any other applicable law." N.J.A.C. 7:26B-1.8(b).

Although Clarios relied for upwards of fifteen years upon the suspension of their remediation obligation, this reliance has only been based on their unilateral expectation that the prior remediation agreement would remain compliant. It has not been based on any regulatory or statutory provisions. In fact, the relevant provisions actively undercut such reliance. The letter NJDEP sent to Clarios, dated March 12, 2007, granting the RIP waiver stated:

> This authorization [to transfer ownership of the Site without the submission of a remediation certificate or similar] shall be limited to the above referenced transaction only and shall not restrict or prohibit [NJDEP] or any other agency from taking regulatory action under any other statute, rule[,] or regulation. By issuing this Letter of Authorization, [NJDEP] continues to reserve all rights to pursue appropriate enforcement actions allowable under the law for violations of ISRA as associated with this transaction.

12

From the outset, NJDEP explicitly noted the limitations inherent in this waiver and the reasonable scope of Clarios's right to rely on it. Thus, not only has Clarios already received the benefit to which it is entitled by the RIP waiver— that is, the ability to cease operations or transfer ownership without obtaining final remediation approval—but also Clarios has no legitimate grounds for relying on any further benefit—namely, the continued delay of their responsibility for remediation of the industrial establishment. Without lawful grounds for reliance on a benefit, Clarios has neither a legitimate claim to entitlement nor a property interest associated with that benefit.

Clarios argues the Mathews factors require that notice and some form of hearing be afforded to it. The Mathews factors derive from the United States Supreme Court's decision in Mathews v. Eldridge and are used to determine whether given "administrative procedures . . . are constitutionally sufficient" to satisfy "the specific dictates of due process" in a particular situation.[1] 424

---

[1]     [P]rior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and[,] finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the

U.S. 319, 334-35 (1976). But we would only undertake an analysis of Mathews factors when the right to due process is implicated in the first place, by a threat to a liberty or property interest. No property interest exists here, so "constitutionally sufficient" hearing procedures are not required, and analysis of the Mathews factors is irrelevant.

Notably, under this record, the RIP waiver's rescission only implicates Clarios's duty to remediate the Site and does not pose any apparent threat to the continuing viability of the sales transaction from 2011. In the April 20, 2022 rescission letter, NJDEP outlined the processes by which the RIP waiver was granted and then rescinded; the letter also stated when the RIP waiver is rescinded, NJDEP may "require Clarios to complete the remediation pursuant to N.J.A.C. 7:26b-3.3(a)." There is no mention of interfering with the prior completed benefits of the waiver—only of requiring Clarios to fulfill obligations that were never removed by the waiver in the first place.

Any remaining arguments raised by the parties are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

_____

additional or substitute procedural requirement would entail.

[Mathews, 424 U.S. at 334-35.]